UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

JARON STEPHENSON, on behalf of himself and
 all others similarly situated,

               Plaintiff,

               v.

NATIONAL BEVERAGE CORP., d/b/a
LACROIX WATER,

               Defendant.
-----------------------------------------------------------------

Case No.

**CLASS ACTION
COMPLAINT
& DEMAND FOR JURY
TRIAL**

       Plaintiff, **JARON STEPHENSON** ("Plaintiff" or "Mr. Stephenson"), on behalf of himself

and all others similarly situated (collectively, "Plaintiffs"), by and through their undersigned

counsel, JOSEPH & NORINSBERG, LLC, as and for their class action complaint upon Defendant,

NATIONAL BEVERAGE CORP., d/b/a LACROIX WATER. or "Defendant"), hereby alleges as

follows:

### INTRODUCTION

       1.     Plaintiff Jaron Stephenson ("Plaintiff" or "Mr. Stephenson") is a legally blind

individual living with Cone Rod Dystrophy, a progressive retinal condition that severely impairs

both central and peripheral vision. He also lives with Type 1 Diabetes, a chronic autoimmune

disease he has managed since 2012. As a result of these intersecting disabilities, Mr. Stephenson

relies exclusively on screen-reading software to navigate websites, access product information,

and independently purchase consumer goods—including beverages that are compatible with his

medical and dietary needs. (See Ex. A – Diagnosis of Legal Blindness, dated 2/25/2018.)

2. Plaintiff brings this action against Defendant **National Beverage Corp.**, the manufacturer and distributor of LaCroix® sparkling water and related beverage products. National Beverage Corp. is a major national beverage company whose products are sold throughout the United States in grocery stores, convenience stores, and online. Its website, www.lacroixwater.com, is a primary digital gateway through which consumers—including blind consumers—learn about LaCroix flavors, nutritional content, product availability, store locations, and promotional offerings. Despite its size, reach, and consumer-facing business model, Defendant has failed to design, construct, maintain, and operate its website in a manner that is accessible to blind and visually impaired individuals, including Plaintiff.

3. LaCroix beverages are particularly important to Plaintiff because they are **sugar-free, carbohydrate-free, and free of artificial sweeteners**, making them one of the few flavored beverages that Plaintiff can safely consume while managing Type 1 Diabetes. Plaintiff regularly purchases flavored sparkling water as part of his dietary regimen, and LaCroix is widely marketed as a healthier alternative to sugary drinks—precisely the type of product Plaintiff seeks out to manage hydration, blood sugar stability, and overall health.

4. Defendant's website is intended to serve as a comprehensive consumer resource, offering detailed information about LaCroix flavors, ingredients, nutritional profiles, product availability, and store-locator tools. For blind consumers like Mr. Stephenson, accessible digital design is essential to independently determine which flavors are safe for consumption, locate nearby retailers, and explore new product offerings. However, when Plaintiff attempted to use Defendant's website, he was unable to navigate even the most basic functions due to pervasive accessibility barriers that prevented his screen reader from interpreting the site's content.

5.  Plaintiff attempted to access www.lacroixwater.com on multiple occasions to review flavor ingredients, confirm carbohydrate content, and locate nearby stores carrying specific LaCroix products. Each attempt resulted in failure. The website's unlabeled buttons, empty links, inaccessible menus, and broken navigation structure prevented Plaintiff from accessing the very information Defendant makes available to sighted consumers. For a blind individual managing a serious medical condition, the inability to independently verify nutritional information or locate safe beverage options is not a mere inconvenience—it is discriminatory and dangerous.

6.  Plaintiff's experience is corroborated by an automated accessibility audit conducted using SortSite, which identified **widespread WCAG 2.1 Level A and AA violations across more than 150 pages** of Defendant's website. These barriers include, but are not limited to:

- ☐ **Empty buttons** lacking accessible names
- ☐ **Empty links** that provide no context to screen readers
- ☐ **Missing alternative text** on product images
- ☐ **Broken ARIA references** that disrupt semantic structure
- ☐ **Keyboard-inaccessible controls**
- ☐ **Improperly nested interactive elements**
- ☐ **Missing form labels**
- ☐ **Non-descriptive link text**
- ☐ **Contrast failures** across dozens of pages
- ☐ **Broken links** and server errors that prevent navigation

These issues appear on **over 150 pages**, including core consumer-facing pages such as the homepage, flavor pages, recipes, blog posts, store-locator pages, and product-information pages. The website fails WCAG 2.1 Level A and AA standards at scale, rendering it unusable for blind consumers.

7.      As a result of these barriers, Plaintiff was unable to independently obtain nutritional information, explore flavor options, or use the store-locator tool to find LaCroix products near him. Defendant's inaccessible website denied Plaintiff full and equal access to the goods, services, and information that Defendant makes available to the general public, in violation of Title III of the Americans with Disabilities Act.

8.      Plaintiff remains eager to return to Defendant's website once it is accessible. LaCroix beverages are uniquely compatible with his medical needs, and he intends to continue purchasing them. However, until Defendant remediates its website, Plaintiff is deterred from returning because he knows he will encounter the same barriers that previously prevented him from accessing essential product information.

9.      Defendant's failure to ensure digital accessibility is part of a broader pattern of neglect. Despite being a major national beverage company with substantial resources, Defendant has not adopted or implemented accessibility policies, has not conformed its website to WCAG 2.1 AA standards, and has not provided blind consumers with equal access to its online content.

10.      Plaintiff brings this civil action to compel Defendant to bring its website into compliance with the ADA and to ensure that blind and visually impaired consumers receive equal access to the goods, services, and information that Defendant offers to the public.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiff asserts claims arising under federal law, including Title III of the Americans with Disabilities Act (42 U.S.C. § 12181 et seq.) and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794).

12.    This Court has supplemental jurisdiction over Plaintiff's claims arising under the New York State Human Rights Law (Executive Law § 296) and the New York City Human Rights Law (NYC Admin. Code § 8-107), pursuant to 28 U.S.C. § 1367(a), as these claims form part of the same case or controversy under Article III of the United States Constitution.

13.    Venue is proper in this District under 28 U.S.C. § 1391(b) and (c), because Defendant **National Beverage Corp.** conducts substantial, continuous, and systematic business within this District through its consumer-facing website, www.lacroixwater.com, which markets LaCroix® beverages to New York residents, provides nutritional information, and directs consumers to local retailers. A substantial portion of the events giving rise to this action occurred within the Southern District of New York ("SDNY"), as Plaintiff attempted to access Defendant's website from his residence in New York County—within the jurisdiction of this Court—on multiple occasions. Plaintiff's attempts were thwarted by pervasive accessibility barriers that prevented him from reviewing nutritional information, exploring flavor options compatible with his medical needs, and using the store-locator tool to identify nearby retailers carrying LaCroix products.

14.    Jurisdiction and venue are further proper because Defendant's website is expressly designed to reach consumers nationwide, including those residing in New York. The website

invites users to explore LaCroix flavors, review product ingredients, locate stores, and engage with promotional content. Plaintiff, a legally blind New York resident, attempted to use the website to identify LaCroix beverages safe for consumption given his Type 1 Diabetes and to locate nearby stores carrying specific flavors. Defendant's systemic accessibility barriers denied him equal access to these goods and services. Although Plaintiff resides in New York, he frequently travels to Florida—where Defendant is headquartered—to visit immediate family members, and he purchases LaCroix products in both states. Defendant's inaccessible website has imposed additional burdens on Plaintiff by preventing him from independently locating retailers in either jurisdiction, thereby forcing him to rely on third parties for basic consumer tasks that sighted users can perform with ease. [1]

## NATURE OF ACTION

15.    The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind, and visually-impaired persons alike.

16.    In today's tech-savvy world, blind and visually impaired people can access websites using keyboards in conjunction with screen access software that vocalizes the visual

---

[1] Courts have consistently held that website accessibility barriers encountered by in-district users support personal jurisdiction over out-of-state website operators whose commercial activities are purposefully directed at the forum. See, e.g., *Chloé NA v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010); *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018) (exercising personal jurisdiction over out-of-state website operator in ADA website accessibility case); *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017). See also *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017 (2021) (personal jurisdiction exists where a company conducts business in the consumer's home state that relates in some way to the consumer's injuries, including transactions involving similar products).

information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually-impaired person may use to independently access the Internet. Unless websites are designed to be read by screen-reading software, blind and visually-impaired persons are unable to fully access websites and the information, products, goods, and services contained thereon.

17.     Blind and visually-impaired users of Windows-enabled computers have access to several screen-reading programs. Some are commercially licensed, while others—such as Nonvisual Desktop Access ("NVDA"), which Plaintiff uses daily—are freely available. NVDA enables blind users to navigate digital platforms independently, provided those platforms are properly coded for accessibility.

18.     For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users.

19.     Screen readers operate based on sophisticated rules that interpret digital content gathered from the operating system, browser, and application layers. They convert this information into speech, Braille, or other accessible formats. When websites fail to meet accessibility standards, these tools cannot bridge the gap.

20.     The international website standards organization, the World Wide Web Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-established guidelines for

making websites accessible to blind and visually-impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

21.     Non-compliant websites pose common access barriers to blind and visually impaired persons. Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following:

a.     A text equivalent for every non-text element is not provided;

b.     Title frames with text are not provided for identification and navigation;

c.     Equivalent text is not provided when using scripts;

d.     Forms with the same information and functionality as for sighted persons are not provided;

e.     Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

f.     Text cannot be resized without assistive technology up to 200% without losing content or functionality;

g.     If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h.     Web pages do not have titles that describe the topic or purpose;

i.     The purpose of each link cannot be determined from the link text alone or from the link text and the programmatically determined link context;

j.     One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k.     The default human language of each web page cannot be programmatically determined;

l.     When a component receives focus, it may initiate a change in context;

m.    Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n.    Labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she is not a robot;

o.    In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to the specifications, elements may contain duplicate attributes, and/or any IDs are not unique;

p.    Inaccessible Portable Document Format (PDF); and

q.    The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

22.    Websites have features and content that are modified on a daily, and in some instances, hourly basis, and a one-time "fix" to an inaccessible digital platform will not cause the digital platform to remain accessible without a corresponding change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to website technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

## STANDING

23.    Plaintiff, JARON STEPHENSON is a blind, visually-impaired handicapped person and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*., and NYCHRL.

For Plaintiff to access the Internet, he must utilize a computer that contains a screen-reader, such as "NVDA for Windows."

24. Screen reader "software translates the visual Internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user." *Andrews v. Blick Art Materials, LLC,* 286 F.Supp.3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained:

> "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be "clicked," which will bring her to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand.
>
> The screen reading software uses auditory—rather than visual—cues to relay this same information. When a sight-impaired individual reaches a link that may be "clicked on," the software reads the link to the user, and after reading the text of the link, says the word "clickable."…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard."

*Id.* at 373. *see also* American Federation for the Blind, Screen Readers, https://www.afb.org/blindness-and-low-vision/using-technology ("Computer Access for People Who Are Blind or Have Low Vision," & "Using Technology") (Last accessed on September 8, 2025; estimating 26.0 million adult Americans reported sight deficiency).

25. Defendant **National Beverage Corp.** is a publicly traded beverage manufacturer headquartered in Fort Lauderdale, Florida. It owns and operates the LaCroix® brand of flavored sparkling water, which is marketed nationwide as a sugar-free, calorie-free, and carbohydrate-free beverage. Defendant operates the consumer-facing website www.lacroixwater.com, which provides product information, nutritional content, flavor descriptions, promotional materials, store-locator tools, and brand-specific merchandise.

26.     Defendant's website functions as a direct-to-consumer digital platform offering essential product information, nutritional disclosures, store-locator tools, promotional content, and brand engagement features. It is the primary online source for consumers—including blind consumers—to learn about LaCroix flavors, verify ingredient and nutritional information, and locate nearby retailers carrying specific products.

27.     LaCroix beverages are particularly important to Plaintiff because they are sugar-free and free of artificial sweeteners, making them one of the few flavored beverages compatible with his Type 1 Diabetes. Plaintiff regularly purchases flavored sparkling water as part of his dietary regimen and relies on nutritional transparency to avoid products that could destabilize his blood glucose levels. Defendant's website is the exclusive source for detailed flavor descriptions, ingredient disclosures, and product-availability information.

28.     Despite its commercial scale and global reach, Defendant has failed to implement basic accessibility protocols on its website, excluding blind and visually-impaired users from meaningful participation. At all relevant times, Defendant has maintained control over the design, coding, and digital infrastructure of the Website and is responsible for ensuring its compliance with applicable accessibility standards, including the Web Content Accessibility Guidelines ("WCAG") 2.1 Level AA. Although the Website includes nominal references to accessibility, it lacks meaningful ARIA labeling, semantic structure, and keyboard operability across key interactive features. These deficiencies render the Website inaccessible to blind users and place Defendant on constructive notice of noncompliance.

29.     On multiple occasions—including October 28, 2025; November 2, 2025; and November 10, 2025—Plaintiff visited www.lacroixwater.com  intending to review nutritional

information and locate nearby retailers for two specific LaCroix flavors: **LimonCello** and **Pamplemousse (Grapefruit)**. Plaintiff selected these flavors because they are marketed as naturally essenced, sugar-free beverages that align with his medical needs and hydration requirements.

30.     Plaintiff attempted to navigate the **LimonCello** and **Pamplemousse** product pages to verify ingredient profiles, confirm carbohydrate content, and use the store-locator tool to identify nearby retailers. However, he was obstructed by pervasive accessibility barriers that prevented his screen reader from interpreting the content of these pages. These barriers rendered core website functions unusable and obstructed Plaintiff's ability to independently evaluate whether LaCroix products were safe for consumption given his medical needs. Defendant's inaccessible design denied him equal access to nutritional disclosures, flavor information, and store-locator tools—services Defendant offers to the general public but withholds from blind users through its inaccessible interface.

31.     The barriers Plaintiff encountered were not isolated or trivial. They created a concrete and particularized injury by denying him equal access to essential product information and consumer tools. Without remediation, these barriers will persist, deterring Plaintiff from revisiting the site and depriving him of the ability to engage with Defendant's offerings on equal terms. The deterrent effect is ongoing and directly tied to Defendant's failure to implement accessible design standards.

32.     Plaintiff's experience is not merely technical—it is personal. As a blind individual managing a degenerative retinal condition and Type 1 Diabetes, Plaintiff must independently verify nutritional content and locate safe beverage options. Defendant's inaccessible website

compounds the isolation and uncertainty faced by individuals navigating chronic medical conditions. Equal access is not a convenience; it is a necessity.

33.     Defendant's website fails to conform to the Web Content Accessibility Guidelines (WCAG) 2.1 Level AA, the prevailing technical standard for digital accessibility. These violations constitute unlawful discrimination under Title III of the ADA because they exclude blind individuals from full and equal enjoyment of Defendant's goods, services, and privileges.

34.     These barriers denied Plaintiff equal access to Defendant's consumer-facing website, preventing him from reviewing nutritional information, exploring flavor options, and using the store-locator tool. Plaintiff was unable to determine whether specific LaCroix flavors were medically appropriate, available near him, or safe for consumption.

35.     Plaintiff returned to the website on several subsequent occasions—including December 15, 2025—seeking to complete these tasks but was blocked by the same and additional accessibility barriers. Plaintiff remains interested in using the website and intends to return once it is made accessible.

36.     Defendant's failure to implement standard accessibility features—such as semantic markup, ARIA roles, and keyboard operability—constitutes a pattern of digital exclusion. Despite offering nationwide consumer products and brand-engagement tools, Defendant's website remains incompatible with screen-reader technology and inaccessible to blind users.

37.     Defendant's website, www.lacroixwater.com, is a digital extension of its national beverage operations, offering product information, nutritional disclosures, store-locator tools, and promotional content. As such, it constitutes a place of public accommodation under Title III of the ADA and must comply with WCAG to ensure equal access for individuals with disabilities.

38.     Plaintiff intends to return to Defendant's website for several reasons. First, LaCroix beverages are uniquely compatible with his medical needs. Second, the website is the exclusive source for detailed flavor descriptions, nutritional disclosures, and product-availability information. Third, the website frequently publishes time-sensitive content—including new flavor launches, promotional campaigns, and store-availability updates—not available through third-party platforms.

39.     Plaintiff's counsel conducted an accessibility audit of Defendant's website on November 18, 2025, using **Power Mapper's Sort Site** program, and another scan on December 18, 2025, which revealed multiple WCAG violations, including:

☐ **Missing alternative text** on product images, preventing Plaintiff from identifying which flavor he was viewing

☐ **Broken links** on the flavor pages, including links returning "400 Bad Request" and "500 Internal Server Error"

☐ **MIME-type mismatches** (e.g., product images served as text/plain or application/octet-stream), causing screen readers to skip or misinterpret visual content

**Clickable controls without ARIA roles**, preventing Plaintiff from activating buttons to view nutritional information

☐ **Improperly nested interactive elements** (e.g., <button> inside <a>), causing NVDA to ignore key controls

☐ **Non-descriptive link text** (e.g., "Learn More"), which provided no context when read aloud

☐ **Keyboard-inaccessible elements**, preventing Plaintiff from navigating to the store-locator tool

☐ **Empty menu items** that provided no audible label.

40.     Defendant therefore uses standards, criteria, or methods of administration that have the effect of discriminating against or perpetuating the discrimination of others, as alleged herein.

41.     The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires: "In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . [w]here appropriate, injunctive relief shall also include requiring the . . . modification of a policy . . ." 42 U.S.C. § 12188(a)(2).

42.     Because Defendant's Website has never been equally accessible, and because Defendant lacks a corporate policy that is reasonably calculated to cause the website to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiff ("Agreed Upon Consultant") to assist Defendant to comply with WCAG 2.1 guidelines for Defendant's Website. Plaintiff seeks that this permanent injunction requires Defendant to cooperate with the Agreed Upon Consultant to:

a. Train Defendant's employees and agents who develop the Website on accessibility compliance under the WCAG 2.1 guidelines;

b. Regularly check the accessibility of the Website under the WCAG 2.1 guidelines;

c. Regularly test user accessibility by blind or vision-impaired persons to ensure that Defendant Website complies with the WCAG 2.1 guidelines; and

d. Develop an accessibility policy that is disclosed on Defendant's Website, with contact information for users to report accessibility-related problems.

43.     Although Defendant may currently have centralized policies regarding maintaining

15

and operating the Website, Defendant lacks a plan and policy reasonably calculated to make it fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers.

44.    Upon information and belief, Defendant has invested substantial sums in developing and maintaining the Website and has generated significant revenue from its online platform. These amounts are far greater than the associated cost of making Defendant's Website equally accessible to visually impaired customers. Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use the Website.

## CLASS ACTION ALLEGATIONS

45.    Plaintiff, JARON STEPHENSON, on behalf of himself and all others similarly situated, seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Defendant's Website www.lacroixwater.com, and as a result have been denied access to the equal enjoyment of goods and services, during the relevant statutory period.

46.    Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a New York City Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the City of New York and State of New York who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services offered during the relevant statutory period.

47.    Common questions of law and fact exist amongst the Class, including:

    a.    Whether Defendant's Website is a "public accommodation" under the ADA;

b. Whether Defendant's Website is a "place or provider of public accommodation" under the NYCHRL;

c. Whether Defendant's Website denies the full and equal enjoyment of the products, services, facilities, privileges, advantages, and/or accommodations to people with visual disabilities, violating the ADA; and

d. Whether Defendant's Website denies the full and equal enjoyment of the products, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the NYCHRL, NYCRL, and the NYHRL

48. Plaintiff's claims are typical of the Class. The Class, similar to the Plaintiff, are severely visually impaired or otherwise blind, and claims that Defendant has violated the ADA, NYSHRL, NYCRL, and/or the NYHRL by failing to update or remove access barriers on the Website so that the website can be independently accessible to the Class.

49. Plaintiff will fairly and adequately represent and protect the interests of the Class Members because Plaintiff has retained and is represented by counsel who is competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the Class Members. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief concerning Plaintiff and the Class as a whole.

50. Alternatively, Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class Members predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

51. Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing

of numerous similar suits by people with visual disabilities throughout the United States.

52.     Moreover, judicial economy will be served by maintaining this lawsuit as a class action for numerosity purposes in that it is likely that the number of patrons who have attempted to utilize the services of Defendant's online platform exceeds 50 or more sight-impaired individuals.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.*)**

53.     Plaintiff JARON STEPHENSON, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

54.     Defendant's Website, www.lacroixwater.com, that is offered as a link to the company is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

55.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

56.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also

includes, <u>inter</u> <u>alia</u>:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

57.     The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

58.     Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

<u>**SECOND CAUSE OF ACTION**</u>
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

59.     Plaintiff, JARON STEPHENSON, on behalf of himself and the New York City

19

Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

60.     N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

61.     Defendant is subject to NYCHRL because it owns and operates the Website www.lacroixwater.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

62.     Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, www.lacroixwater.com, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

63.     Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-

107(15)(a).

64.     Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

> e.      constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

> f.      constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

> g.      failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

65.     Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

66.     As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

67.     Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

68.     Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

69. Plaintiff is also entitled to reasonable attorneys' fees and costs.

70. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

### THIRD CAUSE OF ACTION
### (New York State Human Rights Law)
### ("NYSHRL")

71. Plaintiff, JARON STEPHENSON, on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

72. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

73. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

74. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, www.lacroixwater.com,, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

75. Plaintiff has visited the Website on a number of occasions and has encountered barriers to his access that exist.

76.     Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

77.     Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

78.     Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities.  This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device.  Article 15 of N.Y. Exec. Law § 296(2)(c).

79.     The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services

because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

80.    Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

81.    Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

82.    Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

83.    Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

**FOURTH CAUSE OF ACTION**
**(Violation of New York State Civil Rights)**
**("NYCRL")**

84.    Plaintiff, JARON STEPHENSON, on behalf of himself and the New York City

Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

85.     Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

86.     Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

87.     No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

88.     § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

89.     Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

90.    Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

91.    Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

92.    Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id...*

93.    Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

## FIFTH CAUSE OF ACTION
### (Declaratory Relief)

94.    Plaintiff, JARON STEPHENSON, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

95.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182,

*et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

96.     A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a.     A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b.     A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.     A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d.     An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e.     Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f.     Pre-judgment and post-judgment interest;

g.     An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h.     Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact

the Complaint raises.


Dated: New York, New York
          December 19, 2025

<div style="text-align:center">Respectfully submitted,</div>

**JOSEPH & NORINSBERG, LLC**

**    /s/ Robert Schonfeld**
Robert Schonfeld, Esq.
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889